### UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **BAUHAUS SOFTWARE INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **TVPAINT DEVELOPPEMENT, and** | § | **SA-05-CA-1209 FB (NN)** |
| **CLAUDE ADAM, Individually, and** | § | |
| **HERVE ADAM, Individually,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| **and** | § | |
| | § | |
| **TVPAINT DEVELOPPEMENT,** | § | |
| | § | |
| **Third-Party Plaintiff,** | § | |
| **v.** | § | |
| | § | |
| **DAN KRAUS, Individually, and** | § | |
| **PAUL FORD, Individually, and** | § | |
| **STACEY FORD, Individually,** | § | |
| | § | |
| **Third-Party Defendants.** | § | |

### ORDER ON MOTIONS FOR SUMMARY JUDGMENT
### ON BREACH-OF-CONTRACT CLAIMS,
### MOTIONS FOR PRELIMINARY INJUNCTION, AND MOTIONS TO DISMISS

This order addresses the following motions: the defendants' motion for summary

judgment on their breach-of-contract claim and the plaintiff's breach-of-contract claim,[1] the

defendants' motion for partial summary judgment on termination of the copyright license

---

[1]Docket entry # 132.

1

agreement,[2] the plaintiff's motion for summary judgment on its breach-of-contract claim and on

its declaratory judgment claim that it is co-owner of the Mirage software,[3] the defendants'

motions for preliminary injunction,[4] the plaintiff's motions for preliminary injunction,[5] and the

defendants' motions to dismiss.[6]  I have authority to resolve these motions under 28 U.S.C. §

636(c) because the parties have consented to my jurisdiction over the motions now pending in

this case.[7]

### Nature of the Case

In early 2003, defendant TVPaint Developpement (TVPaint) approached plaintiff

Bauhaus Software, Inc. (Bauhaus) about developing and distributing new computer animation

software products.  The parties refer to the software as the Mirage software.  Although the parties

disagree about how this software has evolved, they agree that defendant Herve Adam developed

the original software.  Herve Adam obtained a copyright for that creation in 1991.  In 1997,

Herve Adam and his father, defendant Claude Adam, created TVPaint to further develop and

market Herve Adam's animation software.  Third-party defendants Dan Kraus, Paul Ford, and

Stacy Ford are the principals who comprise Bauhaus.

On July 11, 2003, Bauhaus and TVPaint entered into a Distribution Agreement, giving

---

[2]Docket entry # 42.

[3]Docket entry # 138.

[4]Docket entry # 8.

[5]Docket entry #s 24 & 30.

[6]Docket entry #s 31 & 65.

[7]Docket entry #s 133 & 147

Bauhaus the right to distribute computer animation software products provided by TVPaint. Under the Distribution Amendment, Bauhaus paid TVPaint $10,000/month to distribute the software products.  The parties amended the Distribution Agreement on January 31, 2005, changing the amount of royalties that Bauhaus paid for distributing software products to €10,000/month.

Ultimately, the parties' business arrangement went sour.  Bauhaus sued the defendants for breach of contract, tortious interference with current and prospective contracts, fraud, copyright infringement, federal unfair competition, false advertising, misappropriation, conversion, libel and slander.  The defendants brought counterclaims against Bauhaus, Dan Kraus, Paul Ford and Stacy Ford for breach of contract, copyright infringement, federal unfair competition, false advertising, misappropriation and unfair competition, tortious interference, libel and slander, and copyright invalidity.  This lawsuit—and the motions that are the subject of this order—center on the parties' dispute over the ownership of the Mirage software products and their competing claims for breach of the Distribution Agreement.

In its breach-of-contract claim, Bauhaus alleges that the defendants breached the Distribution Agreement by refusing to update the Mirage software products and to deliver updated products.  In its breach-of-contract counterclaim, the defendants allege that Bauhaus breached the Distribution Agreement when it stopped paying monthly royalties and continued to distribute TVPaint software.  Bauhaus, however, maintains that it has the right to distribute the software products because it is the co-author and co-owner of the products.  The defendants maintain that TVPaint is the sole owner of the products that Bauhaus is distributing.  Because these issues are central to their other claims, the parties seek an adjudication of the issues prior to

3

mediating their dispute.

### The Breach-of-Contract Claims

As a counterclaim, the defendants allege that Bauhaus breached the Distribution Agreement and the Amendment by failing to pay minimum royalties beginning in November 2005.[8]  The defendants have moved for summary judgment on that claim, arguing that the Distribution Agreement clearly and unambiguously obligated Bauhaus to pay TVPaint minimum royalties of $10,000/month through February 2005 and €10,000/month starting March 2005. The defendants contend that Bauhaus breached the agreement when it stopped paying royalties in November 2005, entitling TVPaint to terminate the agreement.[9]  The defendants maintain that they terminated the Distribution Agreement in January 2006, ending Bauhaus's rights to distribute TVPaint's software.  By an earlier motion, the defendants seek partial summary judgment that it properly terminated the Distribution Agreement.[10]  The defendants also seek summary judgment on Bauhaus's breach-of-contract claim—that TVPaint breached the Distribution Agreement by failing to deliver updated Mirage software products.[11]

In response, Bauhaus argues that the defendants are not entitled to summary judgment because Bauhaus terminated the Distribution Agreement in November 2005 after TVPaint materially breached the agreement.  Bauhaus contends TVPaint breached the agreement when TVPaint stated that it would withhold further delivery of Mirage software products and that it

---

[8]Docket entry # 122, ¶ 214.

[9]Docket entry # 132, pp. 5-9.

[10]Docket entry # 42.

[11]Docket entry # 97, ¶¶ 57-69.

4

would no longer make software updates.  Bauhaus maintains that this breach relieved Bauhaus

from its obligation to pay minimum royalties.  Because it maintains the agreement was already

terminated in November 2005, Bauhaus argues that any attempt on TVPaint's part to terminate

the agreement in January 2006 was moot.  Bauhaus also seeks summary judgment on its breach-

of-contract claim—that TVPaint breached the Distribution Agreement by refusing to update the

Mirage software products.  Because the parties agree that Bauhaus stopped paying royalties in

November 2005,[12] whether one of the parties breached the Distribution Agreement depends on

the proper interpretation of the Distribution Agreement.  Interpretation of a contract is a purely

legal matter for the court.[13]

"Texas rules of contract interpretation control in this diversity case."[14]  In Texas, the

following principles apply to contract interpretation:

> In construing a written contract, the primary concern of the court is to ascertain
> the true intentions of the parties as expressed in the instrument.  To achieve this
> objective, courts should examine and consider the entire writing in an effort to
> harmonize and give effect to all the provisions of the contract so that none will be
> rendered meaningless.  No single provision taken alone will be given controlling
> effect; rather, all the provisions must be considered with reference to the whole

---

[12]TVPaint met its summary-judgment burden to show that Bauhaus stopped paying
royalties by presenting an affidavit by defendant Herve Adam.  *See* docket entry # 132, exh. A.
In the affidavit, Herve Adam stated that he is a software programmer of animation software and
that he and his father created TVPaint to further develop and market his animation software.  *See
id*. at ¶¶ 4 & 5.  Herve Adam explained that TVPaint and Bauhaus entered into the Distribution
Agreement on July 31, 2003, and amended the Agreement on January 31, 2005.  *See id*. at ¶ 9 (j)
& (k).  Herve Adam attested that Bauhaus made payments under the agreement until October
2005 and then stopped making payments.  Bauhaus does not dispute this evidence.

[13]*See Finger Furniture Co. v. Commonwealth Ins*., 404 F.3d 312, 314 (5th Cir. 2005).

[14]*Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 99 F.3d 695, 700
(5th Cir. 1996).

instrument.[15]

To show that Bauhaus was obligated to pay minimum royalties, TVPaint relies on the

following contract provisions:

**7.  Payment Terms & Conditions**

**7.1.  Pre-Paid Royalties**.  Bauhaus agrees to pre-pay minimum royalties per
month for the Sales Territories highlighted in Schedule B to TVPaint, to be paid
the first week of each month.  Bauhaus will offset amounts due to TVPaint from
achieved software shipments to reconcile the pre-payment balance — if any — on
a monthly basis.

**7.2.  2003 Royalties Payment**.  Section 7.1 notwithstanding, TVPaint agrees that
for the balance of the 2003 calendar year, Bauhaus shall continue to pre-pay
minimum royalties to TVPaint on a monthly basis, and will provide full payment
of accrued royalties due to TVPaint on January 31, 2004.[16]

Schedule B sets minimum royalties for distributing Mirage software products as follows:

The Americas, including North, South, and Central America
        Under the Following Conditions:

Minimum Royalties payment: USD $10,000 / month[17]

The Amendment to the Distribution Agreement changed the minimum royalties payment to

€10,000/month as shown by the language below:

**Royalty Minimums**.  The royalty minimums are henceforth set for the
America[s] to be:

o        January 2005 - USD $10,000
o        February 2005 - USD $10,000

---

[15]*Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

[16]Docket entry # 132, exh. B.

[17]*Id.*

○        Starting March 2005 - Euros €10,000 per Month[18]

These provisions show that Bauhaus expressly agreed to pay royalties of $10,000/month through

February 2005 and €10,000 beginning in March 2005.  Although the parties do not dispute that

Bauhaus agreed to pay royalties, Bauhaus maintains that its obligation to pay royalties was

dependent on TVPaint's promise to provide updated software.

Bauhaus relies on the following contract provisions to show that its obligation to pay

royalties was dependent on TVPaint's promise to update the Mirage software and to deliver

updated products:

> **4.2.  Updates**.  TVPaint acknowledges it will provide Bauhaus with major and
> minor updates to TVPaint Software highlighted in Schedule A as agreed between
> TVPaint and Bauhaus.  Such updates will not require additional payment on the
> part of Bauhaus other than royalties.

> **2.2.1.  Product Specification**.  TVPaint will effect feature development for
> TVPaint software highlighted in Schedule A products based on a mutually-agreed
> product specification, as defined by market and industry research driven by
> Bauhaus, conducted by both Parties, and presented to TVPaint.  Bauhaus shall be
> entitled to require changes to TVPaint Software highlighted in Schedule A. . . .[19]

This contract language shows that TVPaint agreed to update Mirage software products and to

deliver updated products to Bauhaus for distribution so long as Bauhaus paid royalties.

TVPaint, however, contends that it was not obligated to update the Mirage software

unless Bauhaus met 80% of Bauhaus's sales goals.[20]  TVPaint relies on the following provisions

in the Distribution Agreement to support this position:

---

[18]Docket entry # 132, exh. C.

[19]The parties refer to the software products in Schedule A as the Mirage software.  *See*
docket entry #s 97 at ¶ 13 & 122 at ¶¶ 13, 143 & 144.

[20]Docket entry # 143, § D & Supp. Declaration of Herve Adam, ¶¶ 85-106.

2.2.2.  **Additional Products**.  Conditional to Bauhaus achieving 80% of its stated sales goals as per Section 9.3, TVPaint will provide to Bauhaus further products and technologies, specified in Schedule D, on a schedule to be negotiated in good faith by the TVPaint and Bauhaus.[21]

Section 9.3 referred to in this provision reads as follows:

**Quarterly Sales Review**: TVPaint and Bauhaus will review sales on a quarterly basis, beginning December 31, 2002.  Subject to Bauhaus attaining 80% of its stated sales goals, TVPaint will provide access to the Additional Products listed in Schedule D and additional Sales Territories listed in Schedule E.[22]

Notably, these provisions do not address software updates; instead, the provisions address access to products listed in Schedule D and the sales territories listed in Schedule E.  Neither provision refers to the products listed in Schedule A–the products TVPaint promised to update.  Thus, these provisions do not condition TVPaint's obligation to update the Mirage software and to deliver updated products on the attainment of 80% of Bauhaus's sales goals.

Interpreting Bauhaus's obligation to pay royalties as conditioned on TVPaint's promise to update the Mirage software and to deliver updated products is the only reasonable interpretation of the Distribution Agreement.  TVPaint could not have reasonably intended that Bauhaus would pay royalties throughout the full term of the agreement—"5 years, autorenewing upon expiration for an additional 5 years"[23]—unless TVPaint updated the Mirage software products and delivered updated products to Bauhaus for distribution.  I need only take judicial notice of the frequency of software updates for applications routinely used in the federal courts and the importance of those updates to the users to appreciate the importance of software updates to those in the business of

---

[21]Docket entry # 138, exh. A-2.

[22]*Id*.

[23]Docket entry # 138, exh. A-2, ¶ 9.1.

marketing and distributing software.  Section 4.2's language—"Such updates will not require additional payment on the part of Bauhaus other than royalties"—reflects the importance of software updates and indicates that Bauhaus agreed to pay royalties to distribute updated software.  It is unreasonable to believe that Bauhaus intended to pay $10,000/per month for exclusive rights to distribute out-dated software products.  Logically, updating the Mirage software products is the only way Bauhaus could distribute the software—customers simply would not purchase outdated software.  Considering the provisions about royalty payments and the provisions about updating software products in reference to the Distribution Agreement as a whole, I conclude that Bauhaus's obligation to pay royalties depended on TVPaint developing updated software products.  The next question in the breach-of-contract claims is whether TVPaint breached the Distribution Agreement in November 2005 by refusing to deliver updates.

In Texas, a " breach of contract occurs when a party fails or refuses to perform an act that it expressly promised to do."[24]  "Whether a party has breached a contract is a question of law for the court. . . ."[25]  "A fundamental principle of [Texas] contract law is that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform."[26]  "A party to a contract may elect to terminate the contract and be excused from performance of any executory obligation if the other party . . . commits a material

---

[24]*Methodist Hosps. of Dallas v. Corporate Commc'ns*, 806 S.W.2d 879, 882 (Tex. App.—Dallas 1991, writ denied).

[25]*Meek v. Bishop Peterson & Sharp, P.C.*, 919 S.W.2d 805, 808 (Tex. App.—Houston [14 Dist.] 1996, writ denied).

[26]*Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994).

breach."[27]  A breach is material if it deprived the other party of the benefit that it could have

reasonably anticipated from full performance.[28]  "[A] party who fails to perform his obligation

[under a contract] may not thereafter enforce the remaining terms of the contract against the other

party."[29]

To show that TVPaint breached its obligation to update the Mirage software and to

deliver updated products, Bauhaus presented an affidavit by Dan Kraus.  Kraus is Bauhaus's

chief executive officer.  In his affidavit, Kraus attested that, "Core to discussions and agreement

between TVPaint and Bauhaus was the agreement that new and updated versions of the software

would be constantly developed by the parties and delivered to Bauhaus for sale in the market. . . .

In almost any software sales context, a significant portion of the profit from sales comes from

existing customers' purchases of updated versions of the software in addition to first-time

buyers."[30]  Kraus continued to discuss several instances in which Bauhaus requested updates, but

TVPaint failed to update software products.  The following excerpts from Kraus's affidavit

discuss TVPaint's failure to produce a Japanese version of the Mirage software products and to

incorporate the Uniloc licensing system.

> 21. Bauhaus also worked with TVPaint for several months on the specification
> and development of a Japanese version of the Mirage Software Products.  At
> significant expense, Bauhaus performed market research, translation work, and

---

[27]*Lazy M Ranch v. TXI Operations*, 978 S.W.2d 678, 680-1 (Tex. App.—Austin 1998, pet. denied).

[28]*See Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 693 (Tex. 1994).

[29]*Interceramic, Inc. v. S.. Orient R.R. Co*., 999 S.W.2d 920, 924 (Tex. App.—Texarkana 1999, pet. denied).

[30]Docket entry # 138, exh. A, ¶ 5.

10

design services to prepare a Japanese version of the software.  TVPaint agreed to deliver the Japanese version in the first quarter of 2005 to allow Bauhaus to enter the Japanese animation market.  Bauhaus prepared a translation of the software, text files and user interface into Japanese and furnished the same to TVPaint.  TVPaint then incorporated the translated files into the source code necessary to complete the Japanese version to TVPaint.  Having done this work, including a trip to visit TVPaint in France to discuss the details and plan, TVPaint refused to provide the jointly developed Japanese version of the Mirage Software products unless Bauhaus pay additional minimum prepaid amounts for the right to distribute these updated products. . . .

22. In the fall of 2005, Bauhaus was able to secure a prospective distribution deal with Sony.  Sony had agreed to explore incorporating the Mirage Software Products in a suite of Sony-branded software products.  However, Sony required that the Mirage Software Products incorporate the Uniloc licensing system in order for the Mirage Software Product to be included in a suite of Sony-branded software products.  After discussions with TVPaint, TVPaint agreed to incorporate the Uniloc licensing system in the Mirage Software Products.  However, after Bauhaus had already communicated to Sony that it would incorporate the Uniloc licensing system, TVPaint wrongfully reneged on its agreement and refused to incorporate the Uniloc licensing system in the Mirage Software Products.  TVPaint told Bauhaus in October 2005 that it simply refused to comply with the terms of the Distribution Agreement and to do what was required to secure the Sony deal. . . .[31]

Kraus continued to explain that Bauhaus met with TVPaint in November 2005 to address TVPaint's failure to fulfill its obligations under the Distribution Agreement.  Kraus attested that TVPaint "communicated to Bauhaus that it would withhold any further updates to the Mirage software products, including Mirage v2.0, and would not make any changes to the Mirage Software as requested by Bauhaus."[32]  This action constituted a breach because TVPaint expressly agreed to update software products and deliver updated products to Bauhaus and then refused to update the software.  This breach was material because under the Distribution

---

[31]*Id.* at ¶¶ 21 & 22.

[32]*Id.* at ¶ 25.

11

Agreement, Bauhaus reasonably expected that TVPaint would update the software and deliver

updated software products for distribution.  Because refusing to provide updated software was a

material breach, Bauhaus was no longer obligated to continue paying royalty payments.  Instead,

Bauhaus was entitled to terminate the contract.  Bauhaus acted on this breach by sending

TVPaint a letter in December 2005, notifying TVPaint that Bauhaus considered TVPaint to be in

breach of their agreement and that Bauhaus had sued TVPaint for, among other things, breach of

contract.[33]  Consequently, the Distribution Agreement was terminated in December 2005.  As a

result, Bauhaus is entitled to summary judgment on its breach-of-contract claim unless TVPaint

can show that it did not refuse to update the software and to provide updated products.

  To counter Bauhaus's argument that TVPaint breached the Distribution Agreement,

TVPaint presented a supplemental affidavit by Herve Adam.[34]  In the affidavit, Herve Adam

relied on the two contract provisions about Bauhaus's sales goals to insist that "Bauhaus was not

entitled to 'Giger Upgrades' (i.e., Mirage 2.0) unless Bauhaus achieved at least 80% of its stated

sales goals."[35]  Addressing Bauhaus's request that TVPaint provide a Japanese version of the

Mirage software, Herve Adam asserted that Bauhaus was not entitled to expand into an

additional sales territory—presumably, Japan—unless Bauhaus achieved 80% of its stated sales

goals.[36]  Bauhaus, however, does not complain about not being permitted to expand into an

additional market, but about the failure of TVPaint to update software.  About Bauhaus's request

---

[33]Docket entry # 138, exh. A-7.

[34]Docket entry # 143, Supp. Declaration of Herve Adam, pp. 86-106.

[35]*Id*. at ¶ 89.  *See also id*. at ¶ 97.

[36]*Id*. at ¶ 102.

that TVPaint incorporate the Uniloc licensing system, Herve Adam stated that TVPaint asked
Bauhaus to allow TVPaint to host the registration server as a condition of implementation, but
that Bauhaus refused.[37]  Herve Adam did not explain why TVPaint agreed to implement the
Uniloc licensing system and then conditioned implementation on hosting the registration.
Instead, he asserted that TVPaint had already complied with the Distribution Agreement's
contractual obligation to provide Bauhaus a mutually-approved software protection system.[38]
Notably, Herve Adam did not address TVPaint's November 2005 refusal to provide any
additional software updates.  Consequently, Herve Adam's supplemental affidavit does not show
that TVPaint did not refuse to update the Mirage software and to deliver updated products.  As a
result, Bauhaus is entitled to summary judgment on its breach-of-contract claim.

In their breach-of-contract counterclaim, the defendants also allege that Bauhaus
"violated the provisions of the Distribution Agreement pertaining to territorial restrictions by
distributing [TVPaint's] software all over the world, including in Europe in which [TVPaint] had
exclusive rights to distribute and where [Bauhaus] had no rights."[39]  The defendants ask for
summary judgment on this claim, arguing that Bauhaus no longer has a right to distribute the
Mirage software products because the Distribution Agreement has been terminated.  The
defendants characterize Bauhaus's rights under the Distribution Agreement as a license and rely
on authority from a breach-of-trademark-license case rejecting the argument that a licensor's
prior breach entitled the licensee to continue using the licensor's trademark without paying

_____

[37]*Id*. at ¶ 104.

[38]*Id*.

[39]Docket entry #122, ¶ 215.

13

royalties.[40]  The defendants contend that regardless of whether TVPaint committed any prior breach, Bauhaus has no right to continue selling TVPaint's software once the agreement was terminated because TVPaint is the sole-owner of the Mirage software products.  The defendants, however, cannot prevail on this claim because TVPaint breached its agreement with Bauhaus. Because a party who breaches a material provision of a contract may not enforce the remaining terms of the contract against the other party,[41] the defendants are not entitled to summary judgment on their counterclaim that Bauhaus breached the agreement by continuing to distribute the Mirage software.  For this same reason, the defendants are not entitled to partial summary judgment on their claim that TVPaint properly terminated the Distribution Agreement.

### Bauhaus's Request for Declaratory Judgment

In response to the defendants' motion for summary judgment, Bauhaus seeks summary judgment on its claim for declaratory judgment that it is the co-author and co-owner of the software.[42]  Bauhaus maintains that it is entitled to distribute the Mirage software despite termination of the Distribution Agreement because the Mirage software is a joint work.

"A 'joint work' is a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole."[43]  Whether Bauhaus is a joint owner is significant because a co-author has an independent right to distribute

---

[40]Docket entry # 132, pp. 10-1.

[41]*Interceramic v. S. Orient R.R. Co.*, 999 S.W.2d 920, 924 (Tex. App.—Texarkana 1999, pet. denied).

[42]Docket entry # 97, ¶ 56.

[43]17 U.S.C. § 101.

copies of his copyrighted work without the permission of the other co-author,[44] subject only to a duty to account to the other co-owner for any profits.[45]  Because "[a]uthorship is generally a question of fact for the jury,"[46] summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [Bauhaus] is entitled to a judgment as a matter of law."[47]

  To show that it is a joint owner, Bauhaus relies in part on Kraus's affidavit.  In the affidavit, Kraus explained that TVPaint approached him and third-party defendant Paul Ford about a proposal to jointly develop a new animation software product which would be based in part on a complete rewrite of previous software that TVPaint had developed.[48]  Kraus stated that TVPaint and Bauhaus agreed that Bauhaus would conduct market research to identify and develop needed and desired animation features which TVPaint would code into software.[49] Kraus explained that TVPaint would write the code and Bauhaus would research required

---

  [44]*See* 17 U.S.C. § 106(3) (giving the owner of a copyright the exclusive right to distribute copies of his copyrighted work).

  [45]*See Goodman v. Lee*, 78 F.3d 1007, 1012 (5th Cir. 1996) (discussing the duty to account).

  [46]*Medforms v. Healthcare Mgmt. Solutions*, 290 F.3d 98, 110 (2d Cir. 2002).  *See Andrien v. So. Ocean County Chamber of Commerce*, 927 F.2d 132, 134 (3d Cir. 1991) ("Generally authorship is a factual question for the jury.").

  [47]FED. R. CIV. P. 56.

  [48]Docket entry # 138, exh. A, ¶ 3.

  [49]*Id*. at ¶ 4.

features and develop the features to be incorporated into the software products.[50]  According to

Kraus, TVPaint and Bauhaus contemplated co-developing and co-owning the resulting software

products.[51]  Kraus attested that Bauhaus and TVPaint collaborated extensively in the

development, design and implementation of the Mirage software products.[52]

Bauhaus also relies on particular provisions of the Distribution Agreement to show that it

is a joint owner of the Mirage software products.[53]  One of these provisions provides that

"Bauhaus intends to act as a sales, marketing, market research, product specification, and

distribution organization and *development partner* for TVPaint, and TVPaint intends to provide

software technology to Bauhaus for sale and distribution, and the two companies mutually desire

to set forth in the Agreement the terms and conditions for their future partnership. . . ."[54]

Bauhaus relies on other provisions that it maintains "makes clear that Bauhaus jointly own the

Mirage Software Products with TVPaint."[55]

In addition to Kraus's affidavit and the Distribution Agreement, Bauhaus presented an

affidavit by Stephen Bowie.[56]  Bowie has been employed by Bauhaus since July 2003 as a

---

[50]*Id.*

[51]*Id.* at ¶ 8.

[52]*Id.* at ¶¶ 10-13.

[53]Docket entry # 138, pp. 2312 (referring to ¶¶ 2.2.1, 4.5, 5.1 & 8.2).

[54]Docket entry # 138, exh. A-2, p. 1 (emphasis added).

[55]Docket entry # 138, p. 23.

[56]Docket entry # 138, exh. B.

contract consultant and product specialist.[57]   Bowie attested that Bauhaus was intimately

involved in performing the software development analysis of the Mirage software products and

that Bauhaus provided the specifications for various features and functionality of the Mirage

software products.[58]   Bowie explained that TVPaint performed that part of the software

development referred to as the implementation or coding, and Bauhaus performed the testing and

debugging of the products and performed the maintenance function of the software

development.[59]   Bowie also stated that Bauhaus: (1) prepared all of the documentation for the

software products and provided all of the software training and support;[60] (2) performed the

market research that resulted in new Mirage features;[61] and (3) provided TVPaint with some

source code that was used in Mirage software products.[62]   Bowie attested that he authored the

"great majority of the specific software tools, concepts and functions model needed to complete

th[e] 'animator's toolbar,' and the result was subsequently publicly tested and refined several

times as part of the 'The Animator's Toolbar' plugin for Mirage."[63]   Bowie explained that

features of the Animator's Toolbar were key components in products released by TVPaint in

---

[57]*Id*. at ¶ 3.

[58]*Id*. at ¶ 6.

[59]*Id*.

[60]*Id*.

[61]*Id*. at ¶ 11.

[62]*Id*. at ¶ 10.

[63]*Id*. at ¶ 13.

2006.[64]

This evidence supports Bauhaus's argument that it is a joint owner of the Mirage software products because it indicates that the products were prepared by Bauhaus and TVPaint with the intention that the companies' contributions be merged into inseparable or interdependent parts of a unitary whole. The specific contract provision supports Bauhaus's position and suggests that Bauhaus and TVPaint intended to jointly develop new software products. The affidavits indicate that Bauhaus and TVPaint collaborated in the development of new products. Having presented this evidence, the burden shifts to TVPaint to raise a question of fact about joint ownership.

The defendants maintain that Bauhaus is not entitled to summary judgment on the declaratory judgment claim because TVPaint is the sole owner of the Mirage software products. Rather than being a joint work, the defendants maintain that the Mirage software is a work made for hire. As a work made for hire, the defendants maintain that Bauhaus no longer has the right to distribute the Mirage software products because the Distribution Agreement has terminated.

The Copyright Act defines a "work made for hire" as " (1) a work prepared by an employee within the scope of his . . . employment; or (2) a work specially . . . commissioned for use as a contribution to a collective work . . . if the parties expressly agree in a written instrument . . . that the work shall be considered a work made for hire.[65] Unlike a joint author who is a co-owner of the copyright in a copyrighted work, the employer for whom the work was prepared is considered the owner of the copyright, unless the parties have expressly agreed otherwise in a

---

[64]*Id.*

[65]17 U.S.C. § 101.

written agreement.[66]

To show that TVPaint owns the Mirage software products, the defendants rely on several provisions of the Distribution Agreement.  The particular contract provisions refer to "TVPaint Software and Technology."  The defendants insist that these references identify TVPaint as the originator and owner of the Mirage software.  The defendants also rely on Herve Adam's affidavit to show that Bauhaus is not a joint author or a joint owner of the Mirage software.  In his affidavit, Herve Adam attests that Mirage, Mirage 1.2, and Mirage 1.5 were authored "by employees of TVPaint as . . . works for hire for TVPaint . . . ."[67]  He also attested that all modifications to the software were "done by TVPaint employees during 2003 through 2006"[68] and that TVPaint "licensed Plaintiff Bauhaus to distribute the then current version of its graphic animation and special effects software . . . using the trademark Mirage in the Americas, including North, South and Central America."[69]  Herve Adam complained that even though Bauhaus ceased paying royalties in October 2005, Bauhaus has continued to distribute the software.[70]  Herve Adam also attested that TVP Animation was authored as a work for hire by TVPaint employees for TVPaint and released in 2006.[71]

In his supplemental affidavit, Herve Adam denies that TVPaint ever intended for Bauhaus

---

[66]17 U.S.C. § 201(a) & (b).

[67]Docket entry # 132, exh. A, ¶¶ 9(m), (n) & (o).

[68]*Id*. at ¶ 12.

[69]*Id*. at ¶ 13.

[70]*Id*. at ¶ 23.

[71]*Id*. at ¶ 9(r).

to become a co-author or co-owner of TVPaint software.[72]  Herve Adam references two draft documents[73] that he insists show that TVPaint repeatedly rejected Bauhaus's efforts to "grab[] for ownership rights."[74]  He also references email communications between himself and Paul Ford, and himself and Kraus, which he maintains shows that Bauhaus knew that it was not a co-owner.[75]  In numerous paragraphs, Herve Adam minimized Bauhaus's contributions to the Mirage software, characterizing Bauhaus's contributions as trivial editorial modifications.[76]

The defendants' evidence raises a fact question about the ownership of the Mirage software because it indicates that TVPaint never intended for Bauhaus to become a joint owner. The evidence also raises a fact question about whether Bauhaus's contributions were merged into inseparable and interdependent parts of the Mirage software.  These questions preclude summary judgment on Bauhaus's declaratory judgment claim that it is the co-author and co-owner of the Mirage software.

### The Defendants' Motions for a Preliminary Injunction

The defendants seek a preliminary injunction enjoining Bauhaus and the third-party defendants from infringing on TVPaint's copyright by distributing the Mirage software.[77]  The defendants maintain that Bauhaus lost its right to distribute the Mirage software once the

---

[72]Docket entry # 143, Supp. Declaration of Herve Adam, ¶¶ 10-12.

[73]*Id*. at ¶¶ 13-5.

[74]*Id*. at ¶ 12.

[75]*Id*. at ¶¶ 22-7.

[76]*Id*. at ¶¶ 32-78.

[77]Docket entry #s 8 & 64.

Distribution Agreement was terminated.

"A preliminary injunction is an extraordinary remedy and should be granted only if the movant has clearly carried the burden of persuasion with respect to all [required] factors."[78]

> A preliminary injunction may be granted under section 502 of the Copyright Act if the plaintiff establishes each of the following four factors: (1) a substantial likelihood that the plaintiff will succeed on the merits; (2) a substantial threat that the denial of the injunction will result in irreparable harm to the plaintiff; (3) the threatened injury to the plaintiff outweighs any damage that the injunction may cause to opposing parties; and (4) the injunction will not disserve the public interest.[79]

To show a substantial likelihood that it will prevail on the merits, the plaintiff must prove ownership of copyrighted material and an unauthorized distribution of that material.[80] "'Ownership' is proved by establishing originality and copyrightability of the matter and compliance with statutory formalities."[81]

The defendants maintain that a substantial likelihood exists that they will succeed on their copyright-infringement claim because TVPaint is the sole owner of the software. The defendants' ownership argument is based on the copyright for the original animation software issued to Herve Adam in 1991.[82]   Although the defendants presented the certificate of registration

---

[78]*Allied Marketing Group v. CDL Marketing*, 878 F.2d 806, 809 (5th Cir. 1989).

[79]*Kern River Gas Transmission Co. v. Coastal Corp.*, 899 F.2d 1458, 1462 (5th Cir. 1990).

[80]*Kern River Gas Transmission Co.*, 899 F.2d at 1462.

[81]*Id.*

[82]Docket entry # 8, p. 9 & # 64, p. 10.

for that copyright[83] and other evidence about TVPaint's ownership of the Mirage software,

Bauhaus's evidence about the parties' intent to become co-authors and its evidence about its

contributions to the Mirage software cast considerable doubt upon TVPaint's ownership of the

Mirage software.  This doubt prevents the defendants from showing a substantial likelihood of

success at this point.  TVPaint may own the copyright for the original TVPaint software, but the

parties' dispute centers on software that was developed over ten years after the copyright was

issued.  The defendants have not shown that Bauhaus is distributing a product protected by the

copyright issued to Herve Adam.  The defendants are not entitled to a preliminary injunction.

### Bauhaus's Motions for a Preliminary Injunction

By their third amended complaint[84] and by a separate motion,[85] Bauhaus and the third-

party defendants seek a preliminary injunction, enjoining TVPaint from infringing on Bauhaus-

owned software—specifically, the Animator's Toolbar.[86]  Bauhaus maintains that it owns the

copyright for the Animator's Toolbar and that TVPaint is infringing on that copyright by

distributing software products containing the Animator's Toolbar.[87]  Bauhaus also contends that

TVPaint has contacted Bauhaus's resellers and distributors and informed them that Bauhaus is

---

[83]"In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.  The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court."  17 U.S.C. § 410(d).

[84]Docket entry # 24.

[85]Docket entry # 30.

[86]Docket entry # 24, ¶¶ 25.1-25.16.

[87]*Id*. at ¶ 25.15.

stealing TVPaint's software, causing significant and irreparable harm to Bauhaus's reputation.[88] Bauhaus seeks an order enjoining TVPaint from distributing any disparaging and harmful comment about Bauhaus.

Bauhaus's first request relates to its copyright-infringement claim. To show a substantial likelihood that it will prevail on the merits of that claim, Bauhaus must prove ownership of copyrighted material and an unauthorized distribution of that material.[89]  Bauhaus maintains that a substantial likelihood exists that it will prevail on the merits of the copyright claim because it owns the copyright for its Animator's Toolbar.[90]  Bauhaus has presented proof that it has complied with the statutory formalities for applying for a copyright for the Animator's Toolbar.[91] Although Bauhaus has presented evidence showing that it has applied for the copyright for the Animator's Toolbar and other evidence indicating that it authored the Animator's Toolbar, the defendants have presented evidence indicating that its animation toolbar is different than Bauhaus's Animator's Toolbar.[92]  In particular, the defendants presented an opinion by a purported animation-software expert to explain how and why the toolbars are different.[93]  This evidence casts substantial doubt upon Bauhaus's ownership claim because it indicates that Bauhaus's Animator's Toolbar is not part of TVPaint's software.  This doubt prevents Bauhaus

---

[88]Docket entry # 30, ¶ 49.

[89]*Kern River Gas Transmission Co*., 899 F.2d at 1462.

[90]Docket entry # 30, ¶¶ 45-8 & 55-7.

[91]Docket entry # 50, exhs. A-B.

[92]Docket entry # 32, ¶ 9; docket entry # 68, p. 9.

[93]Docket entry # 68, exh A.

from showing a substantial likelihood of success on this claim.  Therefore, Bauhaus is not entitled to a preliminary injunction enjoining TVPaint from distributing its animation toolbar.

Bauhaus's request for a preliminary injunction enjoining TVPaint from contacting Bauhaus resellers and distributors relates to Bauhaus's business-disparagement claim. "The general elements of a claim for business disparagement are publication by the defendant of the disparaging words, falsity, malice, lack of privilege, and special damages."[94]  "Proof of special damages is an essential part of the plaintiffs' cause of action for business disparagement.  The requirement goes to the cause of action itself and requires that plaintiff 'establish pecuniary loss that has been realized or liquidated as in the case of specific lost sales.'"[95]

Bauhaus has not demonstrated a substantial likelihood of success on its business-disparagement claim because it has not presented evidence of special damages resulting from loss of business expected from its resellers and distributors to whom TVPaint made disparaging statements.  The only evidence that Bauhaus has presented is an affidavit by Kraus.[96]   In the affidavit, Kraus attested that TVPaint, has and, continues to tortiously interfere with Bauhaus's business through email and communications to Bauhaus's resellers and distributors, misinforming them about the facts of this lawsuit.[97]  Kraus stated that TVPaint is deliberately creating confusion about the quality of Bauhaus's products and services as well as the ownership

---

[94]*Hurlbut v. Gulf Atlantic Life Ins*., 749 S.W.2d 762, 766 (Tex. 1987).

[95]*Hurlbut*, 749 S.W.2d at 767.

[96]Docket entry # 30, exh. 12.

[97]*Id*. at ¶ 20.

24

of certain products.[98]   Kraus explained that because the Mirage software and a few ancillary plug-in products are its sole source of revenue, the possible damages of an injunction to TVPaint is outweighed by the threatened harm to Bauhaus.[99]   This evidence is insufficient to show special damages because it does not establish  pecuniary loss that has been realized or liquidated as in the case of specific lost sales.   Without evidence of special damages, Bauhaus cannot demonstrate a substantial likelihood of success on Bauhaus's claim for business disparagement. Consequently, Bauhaus is not entitled to a preliminary injunction.

**The Defendants' Motion to Dismiss Bauhaus's Copyright-Infringement Claim**

The defendants initially moved to dismiss Bauhaus's copyright-infringement claim on grounds that Bauhaus has no standing to bring its claim because Bauhaus does not own the copyright in the Animator's Toolbar.[100]   In response, Bauhaus presented evidence that it has complied with the statutory formalities for registering a copyright for the Animator's Toolbar.[101] That evidence demonstrated that Bauhaus has standing to bring its claim.[102]   The defendants then amended its motion and argued that Bauhaus lacks standing because Bauhaus and TVPaint co-own the Animator's Toolbar, and that as a co-owner, Bauhaus cannot sue TVPaint for copyright

---

[98]*Id*. at ¶ 21.

[99]*Id*. at ¶ 22.

[100]Docket entry # 31.

[101]Docket entry # 50.

[102]*See Apple Barrel Productions v. Beard*, 730 F.2d 384, 386-7 (5th Cir. 1984) (explaining that possession of a registration certificate is not required for standing; instead, the plaintiff must prove payment of the required fee, deposit of the work in question, and receipt by the Copyright Office of a registration application).

infringement.[103]   The defendants maintain that Bauhaus cannot obtain a copyright because Bauhaus does not own the source code–instead, TVPaint owns the source code.[104] The defendants also argued that Bauhaus cannot sue them for copyright infringement over the animation toolbar used in TVPaint Animation software because that toolbar is a different toolbar that TVPaint owns.[105]   The defendants supported their arguments with an opinion from a purported animation-software expert, explaining how and why the Animator's Toolbar and the animation toolbar used in the Mirage software are different.[106]

To prevail in a Rule 12(b)(6) motion, the movant must prove "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief."[107]  In determining whether the movant has met this burden, "the district court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff."[108] "Dismissal is not proper unless it appears, based solely on the pleadings, that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[109]

Here, Bauhaus has alleged the following:

83.  Bauhaus independently identified and developed features and functionalities and wrote the software code for the Animator's Toolbar.  Bauhaus provided the

---

[103]Docket entry #s 65 & 66.

[104]*Id.*

[105]*Id.*

[106]Docket entry # 65, exh. A & # 66, exh. A.

[107]*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

[108]*Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

[109]*Eason v. Holt*, 73 F.3d 600, 601 (5th Cir. 1996).

Animator's Toolbar to TVPaint so that TVPaint could sell the product to consumers.

84.   Without Bauhaus' consent or authority, TVPaint incorporated Bauhaus' contributions to the Mirage Software prodcuts, as well as the features and functionalities fo the Animator's Toolbar into a new software product – TVPaint Animation that TVPaint is now selling without Bauhaus' authorization.

85.   TVPaint has published, distributed and sold copies of TVPaint Animation throughout Europe, the United States and elsewhere. . . .

86.   TVPaint's publication, distribution and sale of the Mirage software Products, Animator's Toolbar and/or TVPaint Animation are without leave or licence from Bauhaus.[110]

Viewed as true, these allegations are sufficient to state a claim for copyright infringement.[111] Consequently, the defendants are not entitled to dismissal of Bauhaus's copyright-infringement claim.

## Conclusion and Orders

For the reasons discussed in this order,

1. The defendants' motion for summary judgment on their breach-of-contract claim and the plaintiffs' breach-of-contract claim (docket entry # 132) is DENIED.

2.  The plaintiff's motion for summary judgment (docket entry # 138) is GRANTED in part and DENIED in part, such that the plaintiff's request for summary judgment on its breach-of-contract claim is GRANTED and the request for summary judgment on the plaintiff's declaratory judgment claim that it is co-owner of the Mirage software is DENIED.

---

[110]Docket entry # 97.

[111]*See Miller v. Universal City Studios*, 650 F.2d 1365, 1375 (5th Cir. 1981) ("To prevail on a claim of copyright infringement, a plaintiff must prove ownership of the copyright and copying by the alleged infringer.").

3.  The defendants' motion for partial summary judgment on termination of the copyright license agreement (docket entry # 42) is DENIED.

4.  The defendants' motions for preliminary injunction (docket entry #s 8 & 64) are DENIED.

5.  The plaintiff's motions for preliminary injunction (docket entry #s 24 & 30) are DENIED.

6.  The defendants' motions to dismiss the plaintiff's copyright-infringement claim (docket entry #s 31 & 65) are DENIED.

7.  Because the parties' have indicated that they will mediate this dispute once the breach-of-contract claims are adjudicated, the plaintiff's motion to compel mediation (docket entry # 89) is DENIED as moot.

8.  The remaining pending motions (docket entry #s 48, 63 & 102) will be HELD IN ABEYANCE until the parties mediate this case.

9.  SUMMARY JUDGMENT is entered in favor of Bauhaus on its breach-of-contract claim.

10.  SUMMARY JUDGMENT is entered in favor of Bauhaus on the defendants' counterclaim for breach of contract.

      **SIGNED** on July 24, 2007.


*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE